United States District Court
Northern District of California

1

2

3

4                          UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6                                EUREKA DIVISION

7

8     JARRETT J.,                          Case No.  20-cv-01201-RMI

9                 Plaintiff,

10         v.                              **ORDER RE: CROSS-MOTIONS FOR**
                                           **SUMMARY JUDGMENT**
11    ANDREW SAUL,                         Re: Dkt. Nos. 16, 17

12                Defendant.

13

14        Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying his

15   application for disability insurance benefits and supplemental security income under Titles II and

16   XVI of the Social Security Act. Plaintiff's request for review of the ALJ's unfavorable decision

17   appears to have been granted by the Appeals Council, which resulted in an extensive written

18   opinion that actually adopted the ALJ's findings and legal conclusions upon the consideration of

19   additional medical evidence that the ALJ had failed to include in the record; therefore, for present

20   purposes, the opinion issued by the Appeals Council is the "final decision" of the Commissioner

21   of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).[1] While the

22   court will treat the Appeals Council's decision as the Commissioner's final decision, this court

23   will also consider the ALJ's decision.[2] Both parties have consented to the jurisdiction of a

24

25   [1] *See* Def.'s Mot. (dkt. 17) at 2 ("The Appeals Council issued the Commissioner's final decision . . .").

26   [2] *See Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993) ("[A]lthough the Appeals Council 'declined to
     review' the decision of the ALJ, it reached this ruling after considering the case on the merits; examining
27   the entire record, including the additional material; and concluding that the ALJ's decision was proper and
     that the additional material failed to 'provide a basis for changing the hearing decision.' For these reasons,
28   we consider on appeal both the ALJ's decision and the additional material submitted to the Appeals
     Council.")

United States District Court
Northern District of California

1    magistrate judge (dkts. 3 & 9), and both parties have moved for summary judgment (dkts. 16 &

2    17). For the reasons stated below, Plaintiff's motion for summary judgment is granted, and

3    Defendant's motion is denied.

4                                    **LEGAL STANDARDS**

5          The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be

6    conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set

7    aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal

8    error. *Flaten v. Sec'y of Health & Human Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase

9    "substantial evidence" appears throughout administrative law and directs courts in their review of

10   factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

11   Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as

12   adequate to support a conclusion." *Id*. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S.

13   197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In

14   determining whether the Commissioner's findings are supported by substantial evidence," a

15   district court must review the administrative record as a whole, considering "both the evidence

16   that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v.

17   Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where

18   evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676,

19   679 (9th Cir. 2005).

20                                   **PROCEDURAL HISTORY**

21         On July 5, 2016, Plaintiff filed an application for Title II and Title XVI benefits, alleging

22   an onset date of December 12, 2013. *See* Administrative Record "*AR*" at 19.[3] As set forth in detail

23   below, the ALJ found Plaintiff not disabled and denied the application on August 30, 2018. *Id*. at

24   19-27. The Appeals Council granted Plaintiff's request for review, and then issued a detailed

25   decision that largely adopted the ALJ's findings and conclusions, and reached the same ultimate

26   conclusion of non-disability on December 17, 2019. *See id*. at 4-9. Thereafter, on February 18,

27

28   [3] The *AR*, which is independently paginated, has been filed in several parts as a number of attachments to Docket Entry #15. *See* (dkts. 15-1 through 15-9).

United States District Court
Northern District of California

1   2020, Plaintiff sought review in this court (dkt. 1) and argued that the ALJ and the Appeals

2   Council erred in discrediting Plaintiff's pain and symptom testimony, and that the ALJ and

3   Appeals Council erred in failing to consider lay witness testimony from Plaintiff's employer. *See*

4   Pl.'s Mot. (dkt. 16) at 5. Defendant contends that no such errors were committed. *See* Def.'s Mot.

5   (dkt. 17) at 5-9.

6                    **SUMMARY OF THE RELEVANT EVIDENCE**

7   *Medical Evidence*

8           Plaintiff, now 43 years old, suffered injuries to his spine and head during a slip and fall

9   incident in December of 2013 while employed as a line cook. *Id*. at 306. Specifically, Plaintiff

10  slipped on a wet floor, landed on his back, struck the back of his head, and suffered a concussion

11  and thoracic and lumbar contusions. *Id*. at 306, 308. Over the subsequent few months, Plaintiff

12  received various levels of chiropractic treatment at the Muir Diablo Occupational Medicine

13  Group, in addition to extensive MRI imaging of his spine in January and March of 2014. *Id*. at

14  307-08. Eight months after his accident, in August of 2014, Plaintiff was referred to Fulton S.

15  Chen, M.D., for evaluation and further treatment. *See id*. at 306-09. Dr. Chen diagnosed Plaintiff

16  with: (1) chronic pain in the lumbar, thoracic, and cervical spine; (2) cervical spondylosis (a

17  condition marked by the degeneration of intervertebral disks); (3) lumbar disc degeneration at L4-

18  L5 and L5-S1, with a 3mm disc protrusion at L4-L5 and a 2mm disc protrusion at L5-S1; and, (4)

19  left-side lumbar radicular pain caused by radiculopathy (the pinching of a nerve root in the spinal

20  column). *Id*. at 308. Upon examination, Dr. Chen found that Plaintiff still suffered from "joint

21  stiffness over the spine, numbness over the legs, numbness over the arms, dizziness, and

22  headaches" as a result of his injuries. *Id*. at 307. Dr. Chen's examination also found that Plaintiff's

23  spine was still tender to palpation, while his ability to experience sensory stimulation across his

24  lower legs remained diminished. *Id*. at 307. As to the frequency and severity with which Plaintiff

25  experiences pain, Dr. Chen found as follows: (1) that Plaintiff still experiences intermittent daily

26  pain that fluctuates between 5 and 10 (on a scale of 1 to 10); (2) that Plaintiff's lower back pain

27  will radiate down to the left leg on an intermittent basis; (3) that Plaintiff experiences occasional

28  left leg paresthesia (a burning or prickling sensation); (4) and that these symptoms are aggravated

3

United States District Court
Northern District of California

1    by movement. *Id*. at 306. In short, Dr. Chen noted that Plaintiff "has pain over the entire spine

2    [and] may experience cervical spine pain on one day, and then thoracic spine [pain] on another

3    day, and then lumbar spine [pain] on another day." *Id*. In addition to prescribing narcotic

4    medication for pain management (which Plaintiff reported as reducing his pain only by 50%), Dr.

5    Chen noted that "[o]verall there is not much more to recommend for him [by way of treatment]

6    beyond what he has already received." *Id*. at 308, 310. However, a subsequent transforaminal

7    epidural steroid injection into Plaintiff's lower spine at L-5-S1 improved the episodes of his lower

8    back pain such as to decrease the pain from that area from 8 to 5 (on a scale of 1 to 10). *Id*. at 316.

9         More than a year after his accident, and several months after his lower lumbar steroid

10   injection, Dr. Chen observed that Plaintiff "continues to have pain along the cervical spine,

11   thoracic spine, and lumbar spine, [t]he severity [of which] ranges from a 3 to 8/10, [and that] [t]he

12   pain is worse after several hours of work." *Id*. at 318. Despite a full year of treatment, Dr. Chen

13   noted in December of 2014 that Plaintiff "remains symptomatic over the entire spine." *Id*. at 319.

14   The following month, in January of 2015, upon observing that Plaintiff still "presents with diffuse

15   spinal pain," Dr. Chen opined that "[w]ith regard to permanent work restrictions[,] there should be

16   no working more than five hours per day, and he should not lift more than 20 pounds." *Id*. at 322.

17   More specifically, Dr. Chen directed that "[t]he patient should not stand and / or walk more than 5

18   hours per day." *Id*. at 328.

19        Thereafter, during the first half of 2015, Dr. Chen repeatedly observed that Plaintiff's

20   condition had remained the same in that he continued to experience pain and difficulty with

21   prolonged standing due to suffering from radiating "pain diffusely along the spine." *See id*. at 330,

22   332. In June of 2015, Dr. Chen noted that Plaintiff's condition had worsened in that his spinal pain

23   was now at a level of 8 (out of 10), the pain was now constant rather than intermittent, and the

24   lower back pain was now consistently extending down both legs. *Id*. at 334. On this occasion, Dr.

25   Chen added that "[f]unctionally[,] he has difficulty with prolonged sitting or standing [and] has

26   difficulty standing for more than 10 minutes at a time . . . [and that] he will probably have to

27   change careers." *Id*. Given the worsening nature of Plaintiff's pain, his narcotic medication

28   (hydrocodone / Norco) was supplemented with or replaced by a considerably stronger medication

1    (hydromorphone / Dilaudid). *Id*. at 334-35.

2    *Plaintiff's Testimony*

3            On April 25, 2018, Plaintiff appeared before the ALJ for a hearing on his disability claim.

4    *Id*. at 39-47. Plaintiff testified that, at the time of the hearing, he was employed as a line cook at a

5    well-regarded restaurant; and, that he has been working in various capacities and in various

6    kitchens since he was 16 years old. *Id*. at 40-41. When asked whether he experiences any

7    limitations with his ability to drive, Plaintiff noted, "I've gotten stuck in my car a few times

8    because I wasn't able to get out. I've had to have people take me out of my car [and, on occasion]

9    I've had to sleep in front of the restaurant in my car because I was unable to drive." *Id*. at 39.

10   Noting that he is only able to tolerate his symptoms enough to work between 15 and 20 hours per

11   week, Plaintiff added that he is precluded from being able to work additional hours due to the pain

12   associated with his three bulged discs and the pinched nerve in his neck. *Id*. at 40, 42. When asked

13   about the heaviest things he is able to lift, Plaintiff stated that the normal demands of the line cook

14   job require the ability to lift 40 to 50 pounds depending on the activity, however, he testified that

15   he is unable to lift anything that weighs more than 25 or 30 pounds without help. *Id*. at 40, 41, 43.

16   Similarly, Plaintiff also testified that while a line cook is expected to frequently effect postural

17   maneuvers such as bending and stooping, he is unable to do either and requires help from

18   colleagues in that regard as well. *Id*. at 43. Plaintiff then added that postural maneuvers and lifting

19   objects accelerate the decline in his ability to function on any given day – "[t]he more I bend over,

20   [], it seems to make it happen faster . . . lifting with the sheet trays of meat depending on how

21   much they weigh and things of that nature can exacerbate it . . . [i]t's quite painful . . . it will just

22   shoot straight up the back of my neck, and actually it sometimes makes me . . . yell in pain and

23   that's usually when the guys step in and help me[,] [i]t's very embarrassing." *Id*. at 44-45. When

24   asked if he might be able to perform in a "sit-down job," Plaintiff stated: "I'm having a hard time

25   just sitting in this chair to be honest . . . I would have to be moving back and forth most likely in a

26   laid-back position, but I don't know what kind of job that would be." *Id*. at 45.

27           Plaintiff then testified that he can usually make it through the first hour of his shift before

28   the pain starts to interfere with his ability to function – as Plaintiff put it: "[i]t's usually in my

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1    lower back, and it slowly works its way up into my shoulders and then into my neck [a]nd then it

2    affects the back of my head and I get headaches [and] nausea[, and] [a]t that point, I'm no longer

3    able to stand up and do my job." *Id*. at 42. When his condition reaches that point, Plaintiff testified

4    that he needs to lie down for the pain to subside, adding that "[s]ometimes I have to sit in my car

5    for a period of time before I can even drive home . . . [for] [m]aybe 15-20 minutes on average, or

6    it's even been as much as a couple of hours." *Id*. Plaintiff then described the symptoms that

7    require him to rest in his car before commencing his journey home from work (approximately 5

8    miles) as such: "[i]t's not just the pain[,] I'm dizzy and I'm afraid to drive." *Id*.

9        He also testified that he wishes he was able to tolerate working more than a few hours per

10   day due to the economic strain of his diminished income. *Id*. at 40, 46. Plaintiff noted that if he

11   were able to tolerate the pain (which he cannot), his employer would have enough work for

12   Plaintiff to be engaged on a full-time basis, plus overtime hours. *Id*. at 43. Since 2014, Plaintiff

13   has repeatedly attempted to log in more than 20 hours per week but has been unable to cope,

14   stating: "I tried as hard as I could[,] I still try as hard as I can." *Id*. at 45. The few hours per day

15   that Plaintiff is able to work, he experiences near-constant pain; in this regard, he testified that

16   "between one and two hours of my arrival [] I can feel the pain starting," at which point he would

17   need to take some of his narcotic medication. *Id*. at 44. Taking Norco during his shift, however,

18   does not eliminate Plaintiff's pain, it only affords him "a little bit more time at work and enough

19   time to get back home." *Id*. The latter portions of Plaintiff's few hours of daily work were

20   described as such: "when I feel the pain in my neck and I feel it going to my head, I know I only

21   have a limited amount of time, usually like 10-15 minutes to finish what I'm doing, let my

22   superiors know that I'm leaving and they know[,] [t]hey can see it on my face and I get in my car

23   and get home without speeding, but as fast as possible so I can sit down or lay down." *Id*. Plaintiff

24   described his pain as a shooting pain that radiates in two directions – from his upper spine up

25   through his neck and into his head, and from his lower spine down both legs all the way to his toes

26   with sufficient residual intensity to cause pervasive pain in his back, neck, head, legs, and even in

27   his feet. *Id*. Additionally, the pain in Plaintiff's neck and head is generally attended with dizziness

28   and nausea as well. *Id*.

1   *Lay Witness Account*

2       About four months before the ALJ issued his decision, Plaintiff's employer submitted a

3   letter on his behalf. *Id*. at 299. This letter was authored by the executive chef at the restaurant

4   which employs Plaintiff and is essentially the *de facto* equivalent of a third-party function report,

5   as reflected by its opening line: "I write this letter to help convey the level of work that [Plaintiff]

6   can assume on a daily basis." *Id*. The chef then clarified that Plaintiff "has worked for the

7   company for many years now and has always shown a great passion for his work and for [the]

8   love of creating food for others to enjoy . . . [but] is only able to work three to four hours a day, a

9   few days a week." *Id*. The chef then continued to the following effect: "I have personally managed

10  [Plaintiff] and have witnessed the physical pain he is in and how it is affecting him[,] [t]his

11  reduced schedule is the maximum his body can tolerate." *Id*. The chef then urged the ALJ to

12  contact him personally (providing his contact information) in the event that there were any

13  questions or if he could provide any additional information. *Id*. Ultimately, neither the ALJ nor

14  Appeals Council ever communicated with Plaintiff's employer; indeed, they did not venture to

15  discuss or even mention this lay witness testimonial account regarding Plaintiff's diminished

16  ability to function in his workplace due to his chronic pain in either of their opinions (*See AR*. at 4-

17  9, 19-28).

18  **THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

19      A person filing a claim for social security disability benefits ("the claimant") must show

20  that he has the "inability to do any substantial gainful activity by reason of any medically

21  determinable physical or mental impairment" which has lasted or is expected to last for twelve or

22  more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.[4] The Commissioner must consider all

23  evidence in the claimant's case record to determine disability (*see id*. §416.920(a)(3)), and must

24  use a five-step sequential evaluation process to determine whether the claimant is disabled (*see id*.

25  §416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that

26

27  _____

28  [4] The regulations for supplemental security income (Title XVI) and disability insurance benefits (Title II)
    are virtually identical though found in different sections of the CFR. For the sake of convenience, the court
    will generally cite to the SSI regulations herein unless it is necessary to note otherwise.

United States District Court
Northern District of California

1    the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

2         Here, the ALJ set forth the applicable law under the required five-step sequential

3    evaluation process, which the Appeals Council adopted. *See AR* at 4, 20-21. At Step One, the

4    claimant bears the burden of showing he has not been engaged in "substantial gainful activity"

5    since the alleged date on which the claimant became disabled. *See* 20 C.F.R. § 416.920(b). If the

6    claimant has worked and the work is found to be substantial gainful activity, the claimant will be

7    found not disabled. *See id*. Here, the ALJ and the Appeals Council found that Plaintiff meets the

8    insured status requirements through September 30, 2023, and that even though he engaged in

9    substantial gainful activity between April and July of 2017, there have been continuous 12-month

10   periods during which Plaintiff did not engage in substantial gainful activity. *See AR* at 8, 21-22.

11        At Step Two, the claimant bears the burden of showing that he has a medically severe

12   impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An

13   impairment is not severe if it is merely 'a slight abnormality (or combination of slight

14   abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'"

15   *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). At Step

16   Two, the Appeals Council and ALJ found that Plaintiff suffers from the following severe

17   impairments: cervical spondylosis with mild to moderate neural foraminal narrowing; lumbar

18   degenerative disc disease with mild stenosis; and, obesity. *See AR* at 8, 22-23.

19        At Step Three, the ALJ compares the claimant's impairments to the impairments listed in

20   appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the

21   burden of showing his impairments meet or equal an impairment in the listing. *Id*. If the claimant

22   is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful,

23   the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four.

24   *See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ and Appeals Council found that Plaintiff did not

25   have an impairment or combination of impairments that met or medically equaled the severity of

26   any of the listed impairments. *AR* at 8, 23-24. Next, the ALJ and Appeals Council determined that

27   Plaintiff retained the RFC to perform light work with the following limitations: Plaintiff can lift or

28   carry 10 pounds frequently and 20 pounds occasionally; he can stand or walk for four hours in an

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1    eight hour day, and he can sit for six hours in an eight hour day; he can occasionally climb ramps

2    and stairs, and can occasionally stoop, crouch, and crawl; he can never climb ropes, ladders, or

3    scaffolds; he can frequently reach and handle; and, he can never work around unprotected heights

4    or heavy machinery. *Id*. at 8, 24-26.

5    At Step Four, the ALJ and Appeals Council determined that Plaintiff is unable to perform

6    his past relevant work as a line cook. *Id*. at 8, 7. Lastly, at Step Five, the ALJ and Appeals Council

7    concluded, based on the RFC, Plaintiff's age, education, the framework of Rule 202.21 (Table No.

8    2 of 20 C.F.R. Part 404, Subpart P, Appendix 2), and the vocational expert's testimony, that there

9    are jobs that exist in significant numbers which Plaintiff could perform – namely, the ALJ and

10   Appeals Council found that Plaintiff could work as a cashier, a storage facility rental clerk, or as a

11   furniture rental consultant. *See AR* at 7, 27-28. Thus, the ALJ and Appeals Council concluded that

12   Plaintiff had not been under a disability at any time through the date of the ALJ's decision (August

13   30, 2018). *Id*. at 8, 28.

14                                          **DISCUSSION**

15   Plaintiff submits that the Appeals Council and the ALJ erred in rejecting his testimony

16   about the limiting effects of his chronic pain; and that they also erred by failing to consider or even

17   mention the third-party statements by his employer. *See* Pl.'s Mot. (dkt. 16) at 10-16. As for the

18   Commissioner's total failure to even acknowledge the Plaintiff's employer's statements,

19   Defendant ventures to justify the lapse by advancing a series of *post hoc* arguments about why it

20   should not matter that the ALJ and Appeals Council failed to consider the evidence, however, *post*

21   *hoc* justifications are unavailing. This court reviews an agency decision "based on the reasoning

22   and findings offered by the ALJ [or by the Appeals Council] — not *post hoc* rationalizations that

23   attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d

24   1219, 1225 (9th Cir. 1995); *see also Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001). As

25   for Plaintiff's rejected testimony, Defendant offers several pages of argument (*see* Def.'s Mot.

26   (dkt. 17) at 6-8) to retrospectively justify the ALJ's speculative approach to Plaintiff's residual

27   functional capacity which was based on the rejection of Plaintiff's pain testimony through circular

28   logic. In this regard, Defendant's justifications are similarly unavailing in that they either consist

9

1    of focusing on isolated snippets of the record (such as occasions when Plaintiff stated that he felt

2    "much better" at that moment after receiving a spinal injection of steroids), or on physical findings

3    where one or another examiner opined about movements that Plaintiff can execute, but which

4    were silent on *how much pain* was associated with executing that movement. *See id*. at 6-8. In

5    short, the court finds none of Defendant's justifications to be persuasive.

6           In order to reject the statements of a lay-witness, an ALJ must "give[] reasons germane to

7    each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The reasons

8    advanced for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r, SSA*, 454

9    F.3d 1050, 1054 (9th Cir. 2006). Germane reasons for discrediting such testimony could include

10   inconsistency with the medical evidence, or the fact that the testimony "generally repeat[s]" the

11   properly discredited testimony of a claimant. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir.

12   2005). The mere lack of support from medical records is not a germane reason to discount lay-

13   witness testimony. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). Given that the ALJ

14   and Appeals Council failed to even mention the statements of Plaintiff's employer (which largely

15   bolster and corroborate the substance of Plaintiff's own pain testimony), the statements contained

16   in Plaintiff's employer's letter (*AR* at 299) will now be credited as true as a matter of law.

17          Regarding Plaintiff's testimony, it should first be noted that the ALJ in this case did not

18   find that Plaintiff had engaged in any degree of malingering – as evidenced by the ALJ's statement

19   to the effect that "the claimant's medically determinable impairments could reasonably be

20   expected to cause the alleged symptoms." *Id*. at 25. Nevertheless, the ALJ rejected the

21   overwhelming weight of Plaintiff's pain testimony. *AR* at 25-26. It is now well established that

22   "[w]hen an Administrative Law Judge (ALJ) determines that a claimant for Social Security

23   benefits is not malingering and has provided objective medical evidence of an underlying

24   impairment which might reasonably produce the pain or other symptoms he alleges, the ALJ may

25   reject the claimant's testimony about the severity of those symptoms only by providing specific,

26   clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th

27   Cir. 2015). The Court of Appeals for the Ninth Circuit has "'repeatedly asserted that the mere fact

28   that a plaintiff has carried on certain daily activities . . . does not in any way detract from [his or]

United States District Court
Northern District of California

United States District Court
Northern District of California

1    her credibility as to [] overall disability.'" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007)

2    (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). In this context, "[t]he ALJ must

3    make 'specific findings relating to [the daily] activities' and their transferability to a work setting

4    to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id*.

5    (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). Also, "[g]eneral findings are

6    insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

7    undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citing

8    *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

9              In *Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2004), the court discussed an ALJ's error in

10   discrediting the claimant's pain testimony based on her fibromyalgia, as well as the opinions of

11   her treating physicians. *Id*. at 593-94. The court noted that "[f]ibromyalgia's cause is unknown,

12   there is no cure, and it is poorly-understood within much of the medical community." *Id*. at 590.

13   Furthermore, "[t]he disease is diagnosed ***entirely*** on the basis of patients' reports of pain and other

14   symptoms." *Id*. (emphasis added). Thus, the *Benecke* Court explained that the ALJ in that case

15   erred in rejecting the claimant's subjective complaints because of the claimant's "ability to carry

16   out certain routine tasks." *Id*. at 594. As explained by *Benecke*, however, the ALJ's error in that

17   case was rooted in ignoring the fact that the claimant's "daily activities [were] quite limited and

18   ***carried out with difficulty***." *Id*. (emphasis added).

19             In light of these standards, the Commissioner's error in this case becomes clear. As

20   mentioned, the Appeals Council merely noted that it had "considered the claimant's statements

21   concerning the alleged symptoms and adopts the [ALJ's] conclusions in that regard." *Id*. at 5. The

22   ALJ's explanation for rejecting the bulk of Plaintiff's testimony was conclusory and largely based

23   on circular reasoning in that the ALJ employed a logical fallacy by beginning his reasoning with

24   his already-formed conclusion. *See id*. at 25-26. Aside from the oft-repeated boilerplate statement

25   about how Plaintiff's pain and symptom testimony is not "entirely consistent with the medical

26   evidence and other evidence in the record" (*id*. at 25), the ALJ's only explanation in this regard

27   was that *because* Plaintiff has been able to work part-time at the medium exertional level (albeit

28   with great pain and dizziness and nausea) then surely he could *also* perform full-time work at the

United States District Court
Northern District of California

1    light exertional level with a few additional limitations. *See id*. at 25 ("Claimant's ability to sustain

2    this work part-time shows he is *likely* capable of full time work at lower exertional levels.")

3    (emphasis added). Accordingly, the formulation of the RFC in this case, and the rejection of

4    Plaintiff's pain and symptoms testimony, were unambiguously premised on the ALJ's guesswork

5    and speculation – which was adopted wholesale by the Appeals Council. In short, because the

6    ALJ's explanation for rejecting Plaintiff's pain testimony was neither specific, nor clear, nor

7    convincing, (*Garrison v. Colvin*, 759 F.3d 995,1014-15 (9th Cir. 2014)) the entirety of Plaintiff's

8    pain and limitations testimony will now be credited true as a matter of law.

9                                    **Nature of Remand**

10       The decision whether to remand for further proceedings or for payment of benefits

11   generally turns on the likely utility of further proceedings. *Carmickle v. Comm'r, SSA*, 533 F.3d

12   1155, 1169 (9th Cir. 2008). A district court may "direct an award of benefits where the record has

13   been fully developed and where further administrative proceedings would serve no useful

14   purpose." *Smolen*, 80 F.3d at 1292. The Court of Appeals for the Ninth Circuit has established a

15   three-part test "for determining when evidence should be credited and an immediate award of

16   benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Remand for an

17   immediate award of benefits is appropriate when: (1) the ALJ has failed to provide legally

18   sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be

19   resolved before a determination of disability can be made; and, (3) it is clear from the record that

20   the ALJ would be required to find the claimant disabled were such evidence credited. *Id*. The

21   second and third prongs of the test often merge into a single question; that is, whether the ALJ

22   would have to award benefits if the case were remanded for further proceedings. *Id*. at 1178 n.2;

23   *see also Garrison v. Colvin*, 759 F.3d 995, 1021-23 (9th Cir. 2014) (when all three conditions of

24   the credit-as-true rule are satisfied, and a careful review of the record discloses no reason to

25   seriously doubt that a claimant is, in fact, disabled, a remand for a calculation and award of

26   benefits is required).

27       Here, in light of the above-discussed and improperly discredited lay-witness account, as

28   well as Plaintiff's improperly discredited pain testimony, the court will remand the case for further

                                          12

United States District Court
Northern District of California

1    proceedings because it is unclear whether or not the sum of Plaintiff's testimony and that of his

2    employer, in light of the medical evidence, would render Plaintiff conclusively disabled. Indeed,

3    the court finds that the record in the case was poorly developed and that the case could benefit

4    from a more thorough and careful treatment. However, on remand, the ALJ is no longer free to

5    accept or reject the portions of Plaintiff's testimony (and that of his employer) which were part of

6    the record before this court and which have now been credited as true. On remand, the ALJ is

7    **ORDERED** to credit Plaintiff's pain and symptom testimony, as well as the statements of his

8    employer (*AR* at 299) as true.

9           As for remanding a case for further proceedings while crediting some improperly rejected

10   evidence as true, some appellate cases seem to state that improperly rejected evidence *must* be

11   credited as true. *See e.g., Benecke*, 379 F.3d at 594; *Lester*, 81 F.3d at 834. Other appellate cases

12   seem to hold or imply that there is nothing mandatory about crediting improperly rejected

13   evidence as true. *See e.g., Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1106 (9th Cir. 2014).

14   Additionally, the Court of Appeals for the Ninth Circuit seems to have vacillated between

15   acknowledging and denying the existence of an intra-circuit conflict in this regard. *Compare*

16   *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009), *with Garrison*, 759 F.3d at 1021 n.27.

17          To the extent that any such conflict actually exists (which is far from certain), for the

18   reasons discussed above, this court chooses to follow the line of authority that decides against

19   allowing ALJs a second chance to do what should have been done correctly in the first place. *See*

20   *Benecke*, 379 F.3d at 595 ("Allowing the Commissioner to decide the issue again would create an

21   unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *see also*

22   *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this

23   appeal, should not have another opportunity to show that Moisa is not credible any more than

24   Moisa, had he lost, should have an opportunity for remand and further proceedings to establish his

25   credibility."). In any event, there is a wealth of authority wherein other district courts have

26   credited certain improperly rejected evidence as true and then remanded the matter for further

27   administrative proceedings in which the ALJ was ordered to credit the improperly discredited

28

evidence as true on remand.[5] Lastly, to the extent that Defendant wishes to complain that the

appellate court's credit-as-true rule (in any of its iterations) usurps the proper fact-finding role of

the Administration, Defendant must direct such argument to the Court of Appeals or to the United

States Supreme Court, rather than to this court – the same, of course, is true with any disagreement

Defendant might have with the appellate court's "clear and convincing reasons" standard for

rejecting claimant testimony. *See* Def.'s Mot. (dkt. 17) at 5 n.4.

## CONCLUSION

Accordingly, for the reasons stated above, Plaintiff's Motion for Summary Judgment (dkt.

16) is **GRANTED**, and Defendant's Cross-Motion (dkt. 17) is **DENIED**. The case is remanded

for further proceedings consistent with the findings and holdings expressed herein.

**IT IS SO ORDERED.**

Dated: September 17, 2021

ROBERT M. ILLMAN
United States Magistrate Judge

___

[5] *See also Baltazar v. Berryhill*, No. CV 16-8132-E, 2017 U.S. Dist. LEXIS 83515, at \*20-21 (C.D. Cal. May 31, 2017) ("Accordingly, on remand the Administration shall credit as true Dr. Rubinstein's opinion regarding Plaintiff's lifting capacity and shall conduct further proceedings to determine whether Plaintiff is entitled to benefits prior to January 19, 2014."); *Stimson v. Colvin*, 194 F. Supp. 3d 986, 1004 (N.D. Cal. 2016) ("The Court therefore remands for further proceedings. In keeping with the purposes underlying the credit-as-true rule, the Commissioner is instructed on remand to accept Dr. Hoque's diagnosis for the period from September 23, 2011 until Stimson's July 2012 surgery and to devote further administrative proceedings to determining Stimson's ability to work after his surgery."); *S.W. v. Colvin*, No. CV 15-3189-PLA, 2016 U.S. Dist. LEXIS 72834, at \*8 (C.D. Cal. June 2, 2016) ("in its previous remand order, which instructed the ALJ on remand to credit as true William's statements concerning plaintiff's limitations . . ."); *Page v. Colvin*, 2016 U.S. Dist. LEXIS 161286, 2016 WL 6835075, at \*6 (N.D. Cal. Nov. 20, 2016) ("the *Treichler* rule should not be interpreted to require that an ALJ be given a second chance to do what the ALJ should have done correctly in the first place"); *Derr v. Colvin*, No. CV-12-00415-TUC-BPV, 2014 U.S. Dist. LEXIS 143961, at \*39-40 (D. Ariz. Oct. 8, 2014) ("Accordingly, the Court will reverse the Commissioner's final decision with a remand for further proceedings consistent with this opinion. The ALJ shall, on remand, credit Dr. Mittleman's opinion as true, and credit Plaintiff's statements as true. On remand the ALJ shall make a determination regarding onset date and reviewable findings regarding substance use."); *Adame v. Colvin*, No. EDCV 12-1079 AGR, 2013 U.S. Dist. LEXIS 87694, at \*17 (C.D. Cal. June 21, 2013) ("the decision of the Commissioner is reversed and this matter remanded for further proceedings consistent with this opinion. Dr. Sophon's lift/carry restriction must be credited as true on remand."); *see also McNeill v. Colvin*, 2013 U.S. Dist. LEXIS 24752, 2013 WL 645719, at \*8 (C.D. Cal. 2013) (crediting treating physicians' opinions as true and remanding for further administrative proceedings rather than giving the Administration a third opportunity to provide legally sufficient reasons for rejecting a treating physicians' opinions); *Smith v. Astrue*, 2011 U.S. Dist. LEXIS 101057, 2011 WL 3962107, at \*8 (C.D. Cal. Sept. 8, 2011) (same); *Toland v. Astrue*, 2011 U.S. Dist. LEXIS 15411, 2011 WL 662336, at \*8 (C.D. Cal. Feb. 14, 2011) (same).

United States District Court
Northern District of California